**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **CALEB COOK,** individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| **ADVANCE STORES COMPANY, INCORPORATED,** | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Caleb Cook individually and on behalf of all others similarly situated, brings this action against Advance Stores Company, Incorporated ("Advance Auto Parts"). The following allegations are based on Plaintiff's knowledge, investigations of counsel, facts of public record, and information and belief.

## NATURE OF THE ACTION

1.      Plaintiff, Caleb Cook, seeks to hold the Defendant responsible for the injuries the Defendant inflicted on Plaintiff and millions of similarly situated persons ("Nationwide Class Members") due to the Defendant's impermissibly inadequate data security, which caused the personal information of Plaintiff and those similarly situated to be exfiltrated by unauthorized access by cybercriminals (the "Data Breach"). activity announced on or about July 10, 2024 and revealed to Plaintiff and other class members through a Notice Letter. *See* Exhibit 1.

2.      Defendant Advance Auto Parts operates an automotive aftermarket parts provider. It is headquartered in Raleigh, North Carolina. The Company sells auto and replacement parts, oil and fluids, exhaust, fuel systems, engines and ignition, cooling and heating, tools, drivetrain,

transmission, and accessories. Advance Auto Parts serves customers in the United States, Canada, Puerto Rico, and the Virgin Islands.[1]

3.    The Data Breach affected 2.3 million customers and employees.[2]  The data which the Defendant collected from the Plaintiff and Nationwide Class Members, and which was exfiltrated from the Defendant by cybercriminals, were highly sensitive. Upon information and belief, the exfiltrated data included personal identifying information ("PII") such as: name, social security number, driver's license or other government issued identification number, and date of birth.

4.    Upon information and belief, prior to and through the date of the Data Breach, the Defendant obtained Plaintiff's and Nationwide Class Members' PII and then maintained that sensitive data in a negligent and/or reckless manner. As evidenced by the Data Breach, the Defendant inadequately maintained its network, platform, software—rendering these easy prey for cybercriminals.

5.    Upon information and belief, the risk of the Data Breach was known to the Defendant. Thus, the Defendant was on notice that its inadequate data security created a heightened risk of exfiltration, compromise, and theft.

6.    Then, after the Data Breach, Defendant failed to provide timely notice to the affected Plaintiff and Nationwide Class Members—thereby exacerbating their injuries. Ultimately, Defendant deprived Plaintiff and Nationwide Class Members of the chance to take speedy measures to protect themselves and mitigate harm. Simply put, Defendant impermissibly left

---

[1] Bloomberg, "Advance Auto Parts Inc." https://www.bloomberg.com/profile/company/AAP:US  (last accessed July 22, 2024).
[2] Maine Attorney General "Data Breach Notifications " https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/9a6279ea-12a4-47c8-855e-9ce509f5a2b2.html  (last accessed on July 23, 2024).

Plaintiff and Nationwide Class Members in the dark—thereby causing their injuries to fester and the damage to spread.

7.     Even when Defendant finally notified Plaintiff and Nationwide Class Members of their PII's exfiltration, Defendant failed to adequately describe the Data Breach and its effects.

8.     As a result, the identities of Plaintiff and Nationwide Class Members are in jeopardy—all because of Defendant's negligence. Plaintiff and Nationwide Class Members now suffer from a present and continuing  risk of fraud and identity theft and must now constantly monitor their financial accounts.

9.     Armed with the PII stolen in the Data Breach, criminals can commit a litany of crimes. Specifically, criminals can now open new financial accounts in Nationwide Class Members' names, take out loans using Nationwide Class Members' identities, use Nationwide Class Members' names to obtain medical services, use Nationwide Class Members' identities to obtain government benefits, file fraudulent tax returns using Nationwide Class Members' information, obtain driver's licenses in Nationwide Class Members' names (but with another person's photograph), and give false information to police during an arrest.

10.     Plaintiff and Nationwide Class Members will likely suffer additional financial costs for purchasing necessary credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

11.     Plaintiff and Nationwide Class Members have suffered—and will continue to suffer—from the loss of the benefit of their bargain, unexpected out-of-pocket expenses, lost or diminished value of their PII, emotional distress, and the value of their time reasonably incurred to mitigate the fallout of the Data Breach.

12.     Through this action, Plaintiff seeks to remedy these injuries on behalf of himself and all similarly situated individuals whose PII were exfiltrated and compromised in the Data Breach.

13.     Plaintiff seeks remedies including, but not limited to, compensatory damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief—including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

## PARTIES

14.     Plaintiff Caleb Cook is a natural person and resident and citizen of Halifax County, Virginia. Plaintiff was an employee with Advance Auto Parts until October 2023.  On or about July 16, 2024, Plaintiff received a letter informing him of the Data Breach ("Data Breach Notification"), as described more fully below. *See* Exhibit 1.

15.     Defendant Advance Stores Company Incorporated (Advance Auto Parts) is a Virgina corporation with its headquarters and principal place of business located in Raleigh, North Carolina.[3]

## JURISDICTION AND VENUE

16.     This Court has original subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is established because Plaintiff (and many members of the class) are citizens of states different than that of Defendant.

---

[3] State Corporation Commission Clerk's Information System, https://cis.scc.virginia.gov/EntitySearch/Index  (last accessed on July 22, 2024);

17. This Court has personal jurisdiction over Defendant because Advance Stores Company, Incorporated (Advance Auto Parts) maintains its principal place of business in this district.

18. Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District and Advance Auto Parts maintains its principal place of business in the jurisdiction.

## FACTUAL ALLEGATIONS

*Defendant Collected and Stored the PII of Plaintiff and Nationwide Class Members*

19. Defendant sells auto and replacement parts, oil and fluids, exhaust, fuel systems, engines and ignition, cooling and heating, tools, transmission, drivetrain, and accessories, throughout the United States, Canada, Puerto Rico, and the Virgin Islands.

20. Upon information and belief, Defendant received and maintained its clients' PII, such as individuals' names, addresses, dates of birth, and Social Security numbers. These records are stored on Defendant's computer systems.

21. Because of the highly sensitive and personal nature of the information Defendant acquires and stores, Defendant knew or reasonably should have known that it stored protected PII and must comply with healthcare industry standards related to data security and all federal and state laws protecting customers' PII and provide adequate notice to customers if their PII is disclosed without proper authorization.

22. When Defendant collects this sensitive information, it promises to use reasonable measures to safeguard the PII from theft and misuse.

5

23. Defendant acquired, collected, and stored, and represented that it maintained reasonable security over Plaintiff's and Nationwide Class Members' PII.

24. By obtaining, collecting, receiving, and/or storing Plaintiff's and Nationwide Class Members' PII, Defendant assumed legal and equitable duties and knew, or should have known, that they were thereafter responsible for protecting Plaintiff's and Nationwide Class Members' PII from unauthorized disclosure.

25. On its website, Defendant states:[4]

> SECURITY
> We seek to use reasonable organizational, technical, and administrative measures to protect Personal Information within our organization. Unfortunately, no data transmission or storage system can be guaranteed to be 100 percent secure. If you have reason to believe that your interaction with us is no longer secure, please immediately notify us in accordance with the "Contacting Us" section below.

26. Plaintiff and Nationwide Class Members have taken reasonable steps to maintain the confidentiality of their PII, including but not limited to, protecting their usernames and passwords, using only strong passwords for their accounts, and refraining from browsing potentially unsafe websites.

27. Upon information and belief, Plaintiff and Nationwide Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

---

[4] Advance Auto Parts, "Privacy Notice", https://shop.advanceautoparts.com/o/privacy-notice (last accessed on July 22, 2024).

28.     Defendant could have prevented or mitigated the effects of the Data Breach by better securing its network, properly encrypting its data, and/or better selecting its information technology partners.

29.     Defendant's negligence in safeguarding Plaintiff's and Nationwide Class Members' PII occurred despite repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

30.     Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Nationwide Class Members' PII from being compromised.

31.     Defendant failed to properly select its information security partners.

32.     Defendant failed to ensure the proper monitoring and logging of the ingress and egress of network traffic.

33.     Defendant failed to ensure the proper monitoring and logging of file access and modifications.

34.     Defendant failed to ensure the proper training its own and its technology partners' employees as to cybersecurity best practices.

35.     Defendant failed to ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and Nationwide Class Members.

36.     Defendant failed to timely and accurately disclose that Plaintiff's and Nationwide Class Members' PII had been improperly acquired or accessed.

37.     Defendant knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured PII.

7

38.     Defendant failed to provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiff and Nationwide Class Members, misuse the PII and disclose it to others without consent.

39.     Upon information and belief, Defendant failed to ensure the proper implementation of sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

40.     Upon information and belief, Defendant failed to ensure the proper encryption of Plaintiff's and Nationwide Class Members' PII and monitor user behavior and activity to identify possible threats.

***The Data Breach***

41.     On or about July 10, 2024, Defendant mailed the Data Breach Notification letter to its former and current clients, substantially in the form of Exhibit "A" to this Complaint, containing, among other the following statements:

> **Notice of Security Incident**
>
> Advance Stores Company, Incorporated ("Advance Auto Parts") writes to inform you of an incident that involves your personal information. This notice provides information about the incident, our response, and resources available to help protect your information from possible misuse, should you feel it appropriate to do so.

42.     The letter explained what data was stolen in the Data Breach:

> **What data was accessed?**
> The personal information about you involved in this incident may include your name and the following: Social Security number, driver's license or other governmental issued identification number, and date of birth. This information was collected as part of the Advance Auto Parts job application process.
> • description, date of order and related warranty information

8

43.     It concluded by stating that Advance Auto Parts offering 12 months of credit monitoring and identity restoration to its customers as a result of the breach:

> **What We Are Doing.**
> Upon identifying the incident, we promptly terminated the unauthorized access and took proactive measures and at preventing future unauthorized access. We also notified law enforcement.  In addition, we continue to work with the third-party cybersecurity experts to take steps to further harden our systems and emerge from this incident an even more secure organization.
>
> As an added precaution, we are providing you with twelve (12) months of complimentary access to credit monitoring and identity restoration services through Experian. Although we are covering the cost of these services, you will need to complete the enrollment process yourself. Enrollment using the instructions can be found in the Steps you Can Take to Help Protect Personal Information.

44.     As Advance Auto Parts itself notes, one immediate risk, among many, of the PII being stolen from Advance Auto Part's system is that fraudsters, armed with data regarding Advance Auto Parts customers' purchasers, will impersonate Advance Auto Parts tech support to gain additional PII from its customers.  However, Advance Auto Parts did not offer any protective measures to the victims of the Data Breach.

45.     It is likely the Data Breach was targeted at the Defendant due to its status as a large technology vendor that collects, creates, and maintains PII.

46.     Defendant was untimely and unreasonably delayed in providing notice of the Data Breach to Plaintiff and Nationwide Class Members.

47.     Time is of the essence when highly sensitive PII is subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired PII of Plaintiff and Class Members is likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and Nationwide Class Members are now subject to the present

9

and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their PII onto the Dark Web. Plaintiff and Nationwide Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive personal information.

48.   In sum, Defendant largely put the burden on Plaintiff and Nationwide Class Members to take measures to protect themselves.

49.   Defendant did not provide any additional details about the attack.

50.   Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.5% of U.S.-based workers are compensated on an hourly basis, while the other 44.5% are salaried.[5]

51.   According to the U.S. Bureau of Labor Statistics' 2018 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per week;[6] leisure time is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"[7] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

---

[5]   *Characteristics of minimum wage workers, 2020*, U.S. BUREAU OF LABOR STATISTICS https://www.bls.gov/opub/reports/minimum-wage/2020/home.htm#:~:text=%20In%202020%2C%2073.3%20million%20workers,wage%20of%20%247.25%20per%20hour (last accessed March 18, 2024); *Average Weekly Wage Data*, U.S. BUREAU OF LABOR STATISTICS, *Average Weekly Wage Data*, *https://www.bls.gov/news.release/pdf/wkyeng.pdf* (last accessed May 9 2024) (finding that on average, private-sector workers make $1,145 per 40-hour work week.).
[6]   Cory Stieg, *You're spending your free time wrong — here's what to do to be happier and more successful*, CNBC https://www.cnbc.com/2019/11/06/how-successful-people-spend-leisure-time-james-wallman.html (Nov. 6, 2019) (last accessed May, 9, 2024).
[7]   *Id.*

52.     Plaintiff and Nationwide Class Members are now deprived of the choice as to how to spend their valuable free hours and seek renumeration for the loss of valuable time as another element of damages.

53.     Upon information and belief, the unauthorized third-party cybercriminals gained access to Plaintiff's and Nationwide Class Members' PII with the intent of engaging in misuse of the PII, including marketing and selling Plaintiff's and Nationwide Class Members' PII.

54.     Defendant has offered no measures to protect Plaintiff and Nationwide Class Members from the lifetime risks they each now face. As another element of damages, Plaintiff and Nationwide Class Members seek a sum of money sufficient to provide Plaintiff and Nationwide Class Members identity theft protection services for ten years.

55.     Defendant had and continues to have obligations created by reasonable industry standards, common law, state statutory law, and its own assurances and representations to keep Plaintiff's and Nationwide Class Members' PII confidential and to protect such PII from unauthorized access.

56.     Plaintiff and the Nationwide Class Members remain, even today, in the dark regarding the scope of the data breach, what particular data was stolen, beyond several categories listed in the letter as "included" in the Data Breach, and what steps are being taken, if any, to secure their PII and financial information going forward. Plaintiff and Nationwide Class Members are left to speculate as to the full impact of the Data Breach and how exactly the Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

57.     Plaintiff's and Nationwide Class Members' PII and financial information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed

PII and financial information for targeted marketing without the approval of Plaintiff and/or Nationwide Class Members. Either way, unauthorized individuals can now easily access the PII and/or financial information of Plaintiff and Nationwide Class Members.

**Defendant Failed to Comply with FTC Guidelines**

58.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[8] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exfiltration of PII.

59.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[9] The guidelines explain that businesses should:

> a.     protect the personal customer information that they keep;
>
> b.     properly dispose of personal information that is no longer needed;
>
> c.     encrypt information stored on computer networks;
>
> d.     understand their network's vulnerabilities; and
>
> e.     implement policies to correct security problems.

60.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

61.     The FTC recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the

---

[8] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (June 2015), https://bit.ly/3uSoYWF (last accessed May 9, 2024).

[9] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Oct. 2016), https://bit.ly/3u9mzre (last accessed May 9, 2024).

network; and verify that third-party service providers have implemented reasonable security measures.[10]

62.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

63.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***The Experiences and Injuries of Plaintiff and Nationwide Class Members***

64.     Plaintiff and Nationwide Class Members are current and former employees of Advance Auto Parts or those who have submitted a job application to the Defendant.

65.      As a prerequisite of becoming an employee of the Defendant, the Defendant required its potential employees —like Plaintiff and Nationwide Class Members—to disclose their PII.

66.     When Defendant finally announced the Data Breach, it deliberately underplayed the Breach's severity and obfuscated the nature of the Breach. Defendant's Breach Notice fails to explain how the breach occurred (what security weakness was exploited), what exact data elements of each affected individual were compromised, who the Data Breach was perpetrated by, and the extent to which those data elements were compromised.

---

[10] *See Start With Security, A Guide for Business*, FED. TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 9, 2024).

67. Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Nationwide Class Members. And yet, Defendant has done little to provide Plaintiff and the Nationwide Class Members with relief for the damages they suffered.

68. All Nationwide Class Members were injured when Defendant caused their PII to be exfiltrated by cybercriminals.

69. Plaintiff and Nationwide Class Members entrusted their PII to Defendant. Thus, Plaintiff had the reasonable expectation and understanding that Defendant would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that information from unauthorized users or disclosure, and would timely notify them of any data security incidents. Plaintiff and Nationwide Class Members would not have entrusted their PII to Defendant had they known that Defendant would not take reasonable steps to safeguard their information.

70. Plaintiff and Nationwide Class Members suffered actual injury from having their PII compromised in the Data Breach including, but not limited to, (a) damage to and diminution in the value of their PII—a form of property that Defendant obtained from Plaintiff; (b) violation of their privacy rights; (c) the likely theft of their PII; (d) fraudulent activity resulting from the Data Breach; and (e) present and continuing injury arising from the increased risk of additional identity theft and fraud.

71. Because of the Data Breach, Plaintiff and Nationwide Class Members have spent— and will continue to spend—considerable time and money to try to mitigate and address harms caused by the Data Breach.

14

*Plaintiff and the Nationwide Class Face Significant Risk of Present and Continuing Identity Theft*

72.     Plaintiff and Nationwide Class Members suffered injury from the misuse of their PII that can be directly traced to Defendant.

73.     The ramifications of Defendant's failure to keep Plaintiff's and the Nationwide Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

74.     According to experts, one out of four data breach notification recipients become a victim of identity fraud.[11]

75.     As a result of Defendant's failures to prevent—and to timely detect—the Data Breach, Plaintiff and Nationwide Class Members suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

      a.     The loss of the opportunity to control how their PII is used;

      b.     The diminution in value of their PII;

      c.     The compromise and continuing publication of their PII;

      d.     Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

---

[11] Anne Saita, "Study Shows One in Four Who Receive Data Breach Letter Become Fraud Victims", Threat Post, (Feb. 20, 2013) https://threatpost.com/study-shows-one-four-who-receive-data-breach-letter-become-fraud-victims-022013/77549/ (last visited on May 9, 2024).

e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.   Delay in receipt of tax refund monies;

g.   Unauthorized use of stolen PII; and

h.   The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

76.   Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.[12]

77.   The value of Plaintiff's and the proposed Nationwide Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

78.   It can take victims years to spot or identify PII theft, giving criminals plenty of time to milk that information for cash.

---

[12] Brian Stack, "Here's How Much Your Personal Information Is Selling for on the Dark Web," EXPERIAN (Dec. 6, 2017)   https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited on May 9, 2024).

16

79.     One such example of criminals using PII for profit is the development of "Fullz" packages.[13]

80.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

81.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Nationwide Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Nationwide Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

---

[13] "Fullz" is fraudster-speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, "Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm," KREBS ON SECURITY, (Sep. 18, 2014) https://krebsonsecurity.com/tag/fullz/ (last visited on May 9, 2024).

17

82.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.

83.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendant did not rapidly report to Plaintiff and the Nationwide Class that their PII had been stolen.

84.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

85.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

86.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Nationwide Class will need to remain vigilant against unauthorized data use for years or even decades to come.

87.     The FTC has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated

18

that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[14]

88.     The FTC has also issued numerous guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making.[15] According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.[16]

89.     According to the FTC, unauthorized PII disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money, and patience to resolve the fallout.[17] The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act (the "FTCA").

90.     To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive payment card data. See *In the matter of Lookout Services,*

---

[14] "Commissioner Pamela Jones Harbour: Remarks Before FTC Exploring Privacy Roundtable," FED. TRADE COMMISSION (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last visited on May 9, 2024).

[15] "Start With Security, A Guide for Business," FED. TRADE COMMISSION, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 9, 2024).

[16] *Id.*

[17] "Taking Charge, What to Do If Your Identity is Stolen," U.S. DEPARTMENT OF JUSTICE, at 3 (January 2012), https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited on May 10, 2024).

19

*Inc.*, No. C-4326, Complaint ¶ 7 (June 15, 2011) ("[Respondent] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ¶ 7 (Mar. 7, 2006) ("[Respondent] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Respondent] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . .").

91.     These orders, which all preceded the Data Breach, further clarify the measures businesses must take to meet their data security obligations. Defendant thus knew or should have known that its data security protocols were inadequate and were likely to result in the unauthorized access to and/or theft of PII.

92.     Charged with handling highly sensitive PII including, detailed technical specifications of its employees' job applications, which would allow a criminal to impersonate its tech support personnel, Defendant knew or should have known the importance of safeguarding the PII that was entrusted to it. Defendant also knew or should have known of the foreseeable consequences if its data security systems were breached. This includes the significant costs that

20

would be imposed on Defendant's customers as a result of a breach. Defendant nevertheless failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

93.     Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has failed to adequately protect the PII of Plaintiff and millions of members of the proposed Nationwide Class to unscrupulous operators, con artists, and outright criminals.

94.     Defendant's failure to properly and promptly notify Plaintiff and members of the proposed Nationwide Class of the Data Breach exacerbated Plaintiff's and members of the proposed Nationwide Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

## CLASS ACTION ALLEGATIONS

95.     Plaintiff brings this action individually and on behalf of all other persons similarly situated under Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4).

96.     Plaintiff proposes the following Subclass definitions, subject to amendment as appropriate (together, "Nationwide Class"):

> All employees of Auto Parts Inc. impacted by the Data Breach suffered by Advance Auto Parts Inc. and its affiliated entities, announced on or about July 10, 2024. ("Employee Subclass")

> All job applicants of Auto Parts Inc. impacted by the Data Breach suffered by Advance Auto Parts Inc. and its affiliated entities, announced on or about July 10, 2024. ("Job Applicant Subclass")

97.     The Nationwide Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Nationwide Class Members will be reliable and administratively feasible.

98.     Excluded from the Nationwide Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

99.     Plaintiff reserves the right to amend or modify the Class definition—including Subclasses—as this case progresses.

100.    Plaintiff and Nationwide Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

101.    **Numerosity**. The Nationwide Class Members are numerous such that joinder is impracticable. While the exact number of Nationwide Class Members is unknown to Plaintiff at this time, based on information and belief, the Nationwide Class consists of over a million individuals who reside in the U.S. and were or are employees or job applicants of Advance Auto Parts Inc., and whose PII was compromised by the Data Breach.

102.    **Commonality**. There are many questions of law and fact common to the Nationwide Class. And these common questions predominate over any individualized questions

of individual Nationwide Class Members. These common questions of law and fact include, without limitation:

a. If Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Nationwide Class Members' PII;

b. If Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. If Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. If Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. If Defendant owed a duty to Nationwide Class Members to safeguard their PII;

f. If Defendant breached its duty to Nationwide Class Members to safeguard their PII;

g. If Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h. If Defendant should have discovered the Data Breach earlier;

i. If Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

j. If Defendant failed to provide notice of the Data Breach in a timely manner;

k. If Defendant's delay in informing Plaintiff and Nationwide Class Members of the Data Breach was unreasonable;

l.    If Defendant's method of informing Plaintiff and Nationwide Class Members of the Data Breach was unreasonable;

m.    If Defendant's conduct was negligent;

n.    If Plaintiff and Nationwide Class Members were injured as a proximate cause or result of the Data Breach;

o.    If Plaintiff and Nationwide Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

p.    If Defendant breached implied contracts with Plaintiff and Nationwide Class Members;

q.    If Defendant was unjustly enriched as a result of the Data Breach; and

r.    If Plaintiff and Nationwide Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

103.    **<u>Typicality</u>**. Plaintiff's claims are typical of those of other Nationwide Class Members because Plaintiff's information, like that of every other Nationwide Class Member, was compromised in the Data Breach. Moreover, Plaintiff and all Nationwide Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

104.    **<u>Adequacy of Representation</u>**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Nationwide Class. Plaintiff's Counsel are competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

105.    **<u>Predominance</u>**. Defendant has engaged in a common course of conduct toward Plaintiff and Nationwide Class Members, in that all the Plaintiff and Nationwide Class Members' data was stored on the same network system and unlawfully and inadequately protected in the

same way. The common issues arising from Defendant's conduct affecting Nationwide Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

106. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Nationwide Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Nationwide Class Members would create a risk of inconsistent or varying adjudications with respect to individual Nationwide Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Nationwide Class Member.

107. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Nationwide Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

108. Adequate notice can be given to Nationwide Class Members directly using information maintained in Defendant's records.

109. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above, including in paragraph 102.

110.    Defendant has acted on grounds that apply generally to the Nationwide Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

111.    Plaintiff re-alleges and incorporates by reference paragraphs 1-110 of the Complaint as if fully set forth herein.

112.    Defendant required its clients to submit Plaintiff's and Nationwide Class Members' non-public PII to Defendant as part of the job application process.

113.    By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Plaintiff's and Nationwide Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes so it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

114.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable to Defendant. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would at some point try to access Defendant's databases of PII.

115.    After all, PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Nationwide Class

Members. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the PII entrusted to them.

116. Defendant owed a duty of care to Plaintiff and Nationwide Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its, or its service providers', systems and networks, and the personnel responsible for them, adequately protected the PII.

117. Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and Nationwide Class Members, which is recognized by laws and regulations, as well as common law. Defendant was in a superior position to ensure that its own, and its service providers', systems were sufficient to protect against the foreseeable risk of harm to Nationwide Class Members from a data breach.

118. Defendant failed to take appropriate measures to protect the PII of Plaintiff and the Nationwide Class. Defendant is morally culpable, given the prominence of security breaches in the technology and retail industries. Any purported safeguards that Defendant had in place were wholly inadequate.

119. Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Nationwide Class Members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in the technology industry, and allowing unauthorized access to Plaintiff's and the other Nationwide Class Members' PII.

120. Defendant was negligent in failing to comply with industry and federal regulations in respect of safeguarding and protecting Plaintiff's and Nationwide Class Members' PII.

121.     Under the FTCA, Defendant had a duty to employ reasonable security measures. Specifically, this statute prohibits "unfair . . . practices in or affecting commerce," including (as interpreted and enforced by the FTC) the unfair practice of failing to use reasonable measures to protect confidential data.[18]

122.     Moreover, Plaintiff's and Nationwide Class Members' injuries are precisely the type of injuries that the FTCA guards against. After all, the FTC has pursued numerous enforcement actions against businesses that—because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices—caused the very same injuries that Defendant inflicted upon Plaintiff and Nationwide Class Members.

123.     Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

124.     Defendant's failure to comply with FTCA statutory duties and standards of conduct constitutes negligence *per se*.  Defendant's failure to comply with the requisite standard of care caused the Breach, exposing Plaintiff's and Nationwide Class Members' PII to cybercriminals and causing Plaintiff and Nationwide Class Members pecuniary and non-pecuniary harm detailed herein.

125.     But for Defendant's wrongful and negligent breach of its duties to Plaintiff and the Nationwide Class, Plaintiff's and Nationwide Class Members' PII would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the PII of Plaintiff and the Class and all resulting damages.

---

[18] 15 U.S.C. § 45.

126.     Defendant owed Plaintiff and Nationwide Class Members a duty to notify them within a reasonable time frame of any breach to their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Nationwide Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Nationwide Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

127.     Defendant owed these duties to Plaintiff and Nationwide Class Members because they are members of a well-defined, foreseeable, and probable class of individuals who Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendant actively sought and obtained the PII of Plaintiff and Nationwide Class Members.

128.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Nationwide Class Members' PII.  The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a.       Failing to adopt, implement, and maintain adequate security measures to safeguard Nationwide Class Members' PII;

b.       Failing to comply with—and thus violating—FTCA and its regulations;

c.       Failing to adequately monitor the security of its networks and systems;

d.       Failing to have in place mitigation policies and procedures;

e.       Allowing unauthorized access to Nationwide Class Members' PII;

f.       Failing to detect in a timely manner that Nationwide Class Members' PII had been compromised; and

29

g.    Failing to timely notify Nationwide Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

129.    It was foreseeable that Defendant's failure to use reasonable measures to protect Nationwide Class Members' PII would result in injury to Nationwide Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the financial service industry. It was therefore foreseeable that the failure to adequately safeguard Nationwide Class Members' PII would result in one or more types of injuries to Nationwide Class Members.

130.    The injury and harm suffered by Plaintiff and Nationwide Class Members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Nationwide Class Members' PII. Defendant knew or should have known that its systems and technologies for processing and securing the PII of Plaintiff and the Class had security vulnerabilities.

131.    As a result of Defendant's negligence, the PII and other sensitive information of Plaintiff and Nationwide Class Members was compromised, placing them at a greater risk of identity theft and their PII being disclosed to third parties without the consent of Plaintiff and the Nationwide Class Members.

132.    Simply put, Defendant's negligence actually and proximately caused Plaintiff and Nationwide Class Members actual, tangible, injuries-in-fact and damages. These injuries include, but are not limited to, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and

remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence. Moreover, injuries-in-fact and damages are ongoing, imminent, and immediate.

133.   Plaintiff and Nationwide Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

134.   In addition to monetary relief, Plaintiff and Nationwide Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiff and Class Members for a period of ten years.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (On Behalf of the Plaintiff and the Employee Subclass Only)

135.   Plaintiff re-alleges and incorporates by reference paragraphs 1-110 of the Complaint as if fully set forth herein.

136.   Plaintiff and Employee Subclass Members entered into valid and enforceable contracts through which they provided labor and their PII to Defendant. That contract included promises by Defendant to secure, safeguard, and not disclose Plaintiff's and Employee Subclass Members' PII.

137.   In addition, Defendant's Privacy Policy memorialized the rights and obligations of Defendant and its clients. This document was provided to Plaintiff and Employee Subclass Members in a manner in which it became part of the agreement for services.

138.   In the Privacy Policy, Defendant commits to protecting the privacy and security of private information and promises to never share Plaintiff's and Employee Subclass Members PII except under certain limited circumstances.

139.    Plaintiff and Employee Subclass Members fully performed their obligations under their contracts with Defendant.

140.    However, Defendant did not secure, safeguard, and/or keep private Plaintiff's and Employee Subclass Members' PII, and therefore Defendant breached its contracts with Plaintiff and Employee Subclass Members.

141.    Defendant allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Employee Subclass Members' PII without permission. Therefore, Defendant breached the contract with Plaintiff and Employee Subclass Members.

142.    As a result, Plaintiff and Employee Subclass Members have been harmed, damaged, and/or injured as described herein, including in Defendant's failure to fully perform its part of the bargain with Plaintiff and Employee Subclass Members.

143.    As a direct and proximate result of Defendant's conduct, Plaintiff and Employee Subclass Members suffered and will continue to suffer damages in an amount to be proven at trial.

144.    Plaintiff and Employee Subclass Members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

145.    Plaintiff and Employee Subclass Members would not have entered into employment contract with Defendant, or would have demanded significantly higher wages, had they been aware that Defendant would fail to take basic precautions to safeguard their PII.

146.    In addition to monetary relief, Plaintiff and Employee Subclass Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiff and Employee Subclass Members for a period of ten years.

## THIRD CAUSE OF ACTION
### Implied Contract
### (On Behalf of the Plaintiff and the Job Applicant Subclass)

147.     Plaintiff re-alleges and incorporates by reference paragraphs 1-110 of the Complaint as if fully set forth herein.

148.     This claim is pleaded in the alternative to the Second Cause of Action, above.

149.     Plaintiff and Job Applicant Subclass Members were required to deliver their PII to Defendant as part of the job application process set up by Defendant.

150.     Defendant solicited, offered, and invited Job Applicant Subclass Members to provide their PII as part of Defendant's regular business practices.  Plaintiff and Job Applicant Subclass Members accepted Defendant's offers and provided their PII to Defendant.

151.     Defendant accepted possession of Plaintiff's and Job Applicant Subclass Members' PII, for the ostensible purpose of considering Plaintiff's and Job Applicant Subclass Members' job applications.

152.     Plaintiff and Job Applicant Subclass Members entrusted their PII to Defendant.  In so doing, Plaintiff and the Job Applicant Subclass entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Job Applicant Subclass Members if their data had been breached and compromised or stolen.

153.     In entering into such implied contracts, Plaintiff and Job Applicant Subclass Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

154. Implicit in the agreement between Plaintiff and Job Applicant Subclass Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Job Applicant Subclass Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Job Applicant Subclass Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

155. The mutual understanding and intent of Plaintiff and Job Applicant Subclass Members on the one hand, and Defendant on the other, is demonstrated by their conduct and course of dealing.

156. Plaintiff and Job Applicant Subclass Members would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

157. Plaintiff and Job Applicant Subclass Members would not have entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

158. Plaintiff and Job Applicant Subclass Members fully and adequately performed their obligations under the implied contracts with Defendant. Defendant, on the other hand, breached its obligations under the implied contracts with Plaintiff and Job Applicant Subclass Members by failing to safeguard their PII and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

159. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Job Applicant Subclass Members sustained damages, including, but not limited to:

(i) theft of their PII; (ii) lost or diminished value of PII; (iii) uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their PII, which (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

160.     Plaintiff and Job Applicant Subclass Members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

161.     Plaintiff and Job Applicant Subclass Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Job Applicant Subclass Members for a lifetime.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Employee Subclass Only)**

162.     Plaintiff re-alleges and incorporates by reference paragraphs 1-110 of the Complaint as if fully set forth herein.

163.     This Claim is pleaded in the alternative to Second and Third Causes of Action, above.

164.     Plaintiff and Employee Subclass Members conferred a monetary benefit on Defendant. Specifically, they provided labor to Defendant also provided Defendant with their PII.

35

In exchange, Plaintiff and Employee Subclass Members should have received from Defendant adequate data security for their PII.

165.     Defendant knew that Plaintiff and Employee Subclass Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Employee Subclass Members for business purposes.

166.     In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Employee Subclass Members' PII.  Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Employee Subclass Members by utilizing cheaper, ineffective security measures. Plaintiff and Employee Subclass Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

167.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Employee Subclass Members, because Defendant failed to spend this money on appropriate data management and security measures that are mandated by industry standards.

168.     Defendant failed to secure Plaintiff's and Employee Subclass Members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Employee Subclass Members provided through their labor and provision of PII.

169.     Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

170. If Plaintiff and Employee Subclass Members knew that Defendant had not reasonably secured their PII, they would not have agreed to work for and/or provide their PII to Defendant.

171. Plaintiff and Employee Subclass Members have no adequate remedy at law.

172. As a direct and proximate result of Defendant's conduct, Plaintiff and Employee Subclass Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity of how their PII is used; (c) the compromise, publication, and/or theft of their PII; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in its continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Employee Subclass Members.

173. As a direct and proximate result of Defendant's conduct, Plaintiff and Employee Subclass Members have suffered and will continue to suffer other forms of injury and/or harm.

174. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Employee Subclass Members, funds which they ought to have spent, but failed to spend, on cybersecurity.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, requests the following relief:

A.    An Order certifying this action as a class action and appointing Plaintiff as Nationwide Class representative, and the undersigned as Nationwide Class Counsel;

B.    A mandatory injunction directing Defendant to adequately safeguard the PII of Plaintiff and the Class hereinafter by implementing improved security procedures and measures, including but not limited to an Order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete and purge the PII of Plaintiff and Nationwide Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Nationwide Class Members;

    iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Nationwide Class Members' PII;

    v.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

38

vi.  prohibiting Defendant from maintaining Plaintiff's and Nationwide Class Members' PII on a cloud-based database until proper safeguards and processes are implemented;

vii.  requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

viii.  requiring Defendant to conduct regular database scanning and securing checks;

ix.  requiring Defendant to monitor ingress and egress of all network traffic;

x.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Nationwide Class Members;

xi.  requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xii.  requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

39

xiii.  requiring Defendant to meaningfully educate all Nationwide Class Members about the threats that they face because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

C.  A mandatory injunction requiring that Defendant provide notice to each member of the Nationwide Class relating to the full nature and extent of the Data Breach and the disclosure of PII to unauthorized persons;

D.  A mandatory injunction requiring Defendant to purchase credit monitoring and identity theft protection services for each Nationwide Class Member for ten years;

E.  An injunction enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

F.  An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

G.  An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

H.  An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

I.  Granting the Plaintiff and the Nationwide Class leave to amend this Complaint to conform to the evidence produced at trial;

J.  For all other Orders, findings, and determinations identified and sought in this Complaint; and

K.  Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury for any and all issues in this action so triable as of right.


Dated: July 24, 2024                    Respectfully Submitted,

                                        */s/   Ruth A Sheehan* _____

                                        Joel R. Rhine
                                        NCSB 16028
                                        Email: irr@irr@rhinelawfirm.com
                                        Ruth A. Sheehan
                                        NCSB 48069
                                        Email: ras@rhinelawfirm.com
                                        1612 Military Cutoff Road Suite 300
                                        Wilmington NC 28403
                                        Telephone (910) 772-9960

                                        John A. Yanchunis*
                                        JYanchunis@forthepeople.com
                                        Ronald Podolny*
                                        ronald.podolny@forthepeople.com
                                        **MORGAN & MORGAN**
                                        **COMPLEX LITIGATION GROUP**
                                        201 North Franklin Street 7th Floor
                                        Tampa, FL 33602
                                        T: (813) 223-5505
                                        F: (813) 223-5402

                                        *Notice of Special Appearance forthcoming*

41